

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

DS:MHW:LHE
F. #2013R01534

September 30, 2015

By Hand and ECF

The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Latoya Bourne
                Criminal Docket No. 13-601 (RJD)

            United States v. Inocente Rene Gonzalez Martinez
            Criminal Docket No. 13-601 (RJD)

Dear Judge Dearie:

      On October 7, 2015, at 11:00 a.m., the defendants Latoya Bourne and Inocente Rene Gonzalez Martinez are scheduled to be sentenced before Your Honor, based upon their January 21, 2015, guilty pleas to Counts One and Two of the above-referenced indictment, charging respectively, conspiracy to unlawfully produce identification documents in violation of Title 18, United States Code, Section 1028(a)(1) and conspiracy to commit honest services mail fraud, in violation of Title 18, United States Code, Section 1349. The defendants' Presentence Investigation Reports ("PSRs") calculate that the defendants' Adjusted Offense Levels are 25, which given that each defendant is within Criminal History Category I, carries a Sentencing Guidelines range of 57 – 71 months' imprisonment.

      By submissions dated July 27, 2015, September 11, 2015, and September 30, 2015, the defendant Gonzalez Martinez challenges his base offense level, requests a minor role adjustment, a downward departure from the Sentencing Guidelines range contained in his PSR and a non-custodial sentence. By letter dated September 28, 2015, Bourne too requests a downward departure from her Advisory Guidelines range and a non-custodial sentence.

      For the reasons set forth below, the Court should accept the Sentencing Guidelines range contained in Bourne's PSR. However, Gonzalez Martinez's Adjusted Offense Level should be reduced by two levels, resulting in an Adjusted Offense Level of 23

and an Advisory Sentencing Guidelines Range of 46 – 57 months' imprisonment. Further, the Court should impose a Guidelines sentence of incarceration as to each defendant.

I. FACTS

As set forth more fully in their PSRs, the defendants' convictions stem from their participation in a multi-district scheme to compromise the integrity of the testing process for obtaining learner's permits and licenses authorizing the bearer to drive certain commercial vehicles, such as school buses and heavy trucks transporting hazardous materials and other cargo.

Specifically, the defendants were security guards assigned to New York State Department of Motor Vehicle (DMV) offices, where they facilitated applicants' cheating on written exams designed to test the applicants' ability to safely drive and service commercial vehicles.

In addition to the PSRs, the defendants' involvement in this scheme was explored at the July 2015 trial of five of their co-defendants. The evidence elicited at that trial is discussed in detail in the government's response to the trial defendants' motion to set aside their guilty verdicts. A copy of that response accompanies this submission and is incorporated by reference.

II. ARGUMENT

A. Gonzalez Martinez's Guidelines Calculation

Gonzalez Martinez's challenge to his adjusted offense level and his request for a minor role adjustment are all predicated upon the same argument. He asserts that because the government's investigation disclosed only one incident in which he assisted an undercover detective in cheating on commercial driver's license (CDL) exams, he should not be charged with the full pecuniary gain of the conspiracy for which he was a member and should, moreover. be deemed a minor participant.

True, the investigation disclosed a single July 10, 2013, incident in which Gonzalez Martinez assisted in CDL test cheating. Government's Post-trial Brief, pp 9 – 10. However, common sense and other evidence belie the defendant's characterization of his involvement as "isolated" and "without any knowledge of the details or scope of the conspiracy." Gonzalez Martinez's Sept. 11, 2015, Sentencing Submission at 2.

As the Court is aware, Joachim Pierre Louis and Luc Desmangles, the two co-defendants with whom Gonzalez Martinez participated in the July 10, 2013, incident, had been engaged in similar activities for months earlier at a different DMV office. It strains credulity to suggest that before recruiting Gonzalez Martinez to participate in the cheating he was not aware of his co-defendants' involvement in similar, prior cheating incidents.

Phone records obtained in the course of the investigation further suggest that Gonzalez Martinez's involvement in the cheating conspiracy was not an isolated instance.. Those records show that from early July 2013, until the conspirators' arrests in late September 2013, Gonzalez Martinez's cellphone was in repeated contact with a cellphone used by Marie Daniel, the self-described leader of the cheating conspiracy.[1] See Phone Record Analysis Attached as Exhibit A.

In any event, even if there were some merit to Gonzalez Martinez's claim that he was involved in only one single incident of cheating and was unaware of the scope of the conspiracy he would still not be entitled to a minor role adjustment where, as here, the defendant's conduct was "indispensable" and "essential to [the] success" of the criminal incident. United States v. Morales, 262 Fed. Appx. 615 (5th Cir. 2008) (affirming district court's denial of minor role adjustment for company supervisor who opened a warehouse door one time to allow storage of drugs). Here, had Gonzalez Martinez not permitted Pierre Louis to remove from and return CDL tests to the Harlem DMV office the cheating in question could not have occurred. He was an indispensable and not minor participant.

Nonetheless, the government concedes that there is some merit to Gonzalez Martinez's claim that he should not be held accountable for the full pecuniary gain of the conspiracy. Application Note 2 of Sentencing Guideline §1B1.3 notes that a "defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct."

Here, although the attached phone record analysis supports Gonzalez Martinez's knowledge of and participation in the CDL cheating conspiracy from early July until the conspirators' arrest in September 2013, the investigation developed no evidence of his involvement prior to July 2013. Accordingly, since Gonzalez Martinez was involved in only three months of a conspiracy spanning approximately six months he should only be held accountable for $77,5000 - one-half of the estimated $155,000 pecuniary gain of the conspiracy. Gonzalez Martinez's PSR ¶ 32. This reduction would reduce Gonzalez Martinez's Adjusted Offense Level to 23, carrying an Advisory Guidelines Sentencing Range of 46 – 57 months.

B. <u>Downward Departure Motions</u>

(1) <u>Gonzalez Martinez</u>

Gonzalez Martinez seeks a downward departure under U.S.S.G. § 5K2.20, which permits such departures when the defendant commits "a single criminal transaction

---

[1] During a July 23, 2013, meeting with an undercover New York City Police Department Detective, Marie Daniel described the cheating operation as hers and provided the detective with the cellphone number (347) 494-9677 at which she could be reached. See Exhibit B. This is the same telephone number in repeated contact with Gonzalez Martinez's.

that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation from an otherwise law-abiding life."

As noted above, evidence developed in the course of the investigation casts doubt on Gonzalez Martinez's characterization of his conduct as an isolated and impulsive act. More significantly, Gonzalez Martinez's apparent contact with Marie Daniel days before the July 10, 2013, cheating incident only underscores what the evidence at trial showed - forethought and planning went into the recruitment of Gonzalez Martinez and the development of the scheme for removal of examinations from the Harlem DMV office.

Consequently, no aberrant behavior departure is warranted.

(2) Bourne

Bourne's downward departure motion is predicated upon her family circumstances. Specifically, Bourne cites the hardship her incarceration would impose upon her two teenage daughters and infant son.

The government sympathizes with Bourne's children for the disruption and hardship their mother's incarceration would entail. However, such hardships are commonplace for defendants with families and should not serve as a basis for departure, given that they are hardships of the defendant's making. See, e.g., United States v. Cutler, 520 F. 3d 136, 165 (2d Cir. 2008) (noting that although the defendant's wife and children "will no doubt face hardship . . . this is true whenever family members are deprived of the company and or support of a defendant who is incarcerated"); United States v. Trupin, 475 F.3d 71, 75 (2d Cir. 2007)(observing that family separation occurs whenever a defendant "runs afoul of the law and is then separated from her family . . . [w]hile tragic, it is a tragedy of[the defendant's] making").

This is particularly true where, as here, the defendant's mother is willing to care for Bourne's children should Bourne be incarcerated. Bourne's PSR ¶ 67.

C. Guidelines Sentences Should Be Imposed

Of course, post-Booker the Guidelines are advisory, rather than binding in the district court. See United States v. Booker, 543 U.S. 220, 259-60 (2005). However, the court must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007). Thereafter, "the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." Id. at 49 – 50. These factors include the nature, circumstances, and seriousness of the offense, the need for specific and general deterrence, the need to protect the public from similar crimes and to avoid unwarranted sentence disparity among defendants found guilty of similar conduct. 18 U.S.S.G. § 3553(a). See also, United States v. Norman, 776 F.3d 67 (2d Cir. 2015).

These factors viewed either individually or collectively warrant imposition of Guidelines sentences of incarceration for Bourne and Gonzalez Martinez.

1. The Nature, Circumstances and Seriousness of the Offense

Crimes such as those for which the defendants stand convicted, bribe receiving by employees performing government functions, have historically been viewed as particularly serious. This is true because such crimes undermine the public's faith and trust in government and distort the proper functioning of the government entities involved. Indeed, there is a special federal interest in guaranteeing the integrity of the CDL testing process, because testing for CDLs in the individual states are subject to standards promulgated by United States Department of Transportation.

Because of their status as security guards at the DMV, special trust was placed upon Bourne and Gonzalez Martinez. Yet they violated this trust out of pure greed. Bourne's crimes were especially deplorable because they involved clearly pre-meditated, repeated acts of fraud. The acts of both defendants endangered the safety of untold members of the public, including some of its most vulnerable such as the elderly and school aged children.

Simply put, the defendants facilitated the receipt of CDLs by individuals who were wholly lacking in the special knowledge necessary to safely operate commercial vehicles. Thereby, they endangered the safety of countless individuals. A Guidelines sentence is amply warranted given the seriousness of their crimes.

2. Deterrence & Public Safety

A Guidelines sentence is also warranted by the need for deterrence and for the protection of the public.

The need for general deterrence weighs in favor of a Guidelines sentence. Significantly, a similar CDL cheating conspiracy was recently prosecuted in the Eastern District of Pennsylvania. See, United States v. Kroshnev, 2013 WL 1768011 (3rd Cir. 2013) (affirming upward departure from Sentencing Guidelines based upon public safety hazard posed by defendants' CDL cheating scheme).

Crimes of this sort are lucrative if successful, involve significant pre-meditation and planning and a careful calculation by the perpetrators of the risks to them if law enforcement uncovers their crimes. These crimes are, therefore, particularly susceptible to deterrence if the perpetrators anticipate that they will be seriously punished if caught. Treating their crimes as peccadillo unworthy of a Guidelines sentence only encourages such misconduct and risks further endangering the public safety.

3. Avoidance Of Sentencing Disparity

On May 14, 2015, citing among other factors the danger to public safety posed by the conduct charged in this case, Your Honor imposed a sentence of 28 months' imprisonment upon Bourne's and Gonzalez Martinez's co-defendant Jose Payano, following his guilty plea to honest services mail fraud.

Payano served as a recruiter for customers who wished to cheat on CDL tests and on occasion facilitated the removal of tests from a testing area so that those tests could be completed by Marie Daniel. See, Bourne's PSR ¶ 22; Gonzalez Martinez's PSR ¶ 23. See also, Government's Post-trial Brief, pp. 11 – 12. As such Payano was a far less culpable member of, and far less critical to, the success of the cheating conspiracy than were Bourne and Gonzalez Martinez. Yet he was similarly situated to Bourne and Gonzalez Martinez in that he too was within Criminal history Category I.

While the sentence imposed upon Payano was below his Advisory Sentencing Guidelines range, the Court concluded that his role and conduct warranted a sentence of incarceration. So too should Bourne's and Gonzalez Martinez's.

III. Conclusion

For the reasons set forth herein, the government respectfully requests that the Court impose a sentence within the applicable Advisory Sentencing Guidelines ranges for Bourne and Gonzalez Martinez.

Respectfully submitted,

KELLY T. CURRIE
United States Attorney

By: _____
Michael H. Warren
Lauren Howard Elbert
Assistant U.S. Attorneys
(718) 254-6355/7577

cc: Clerk of the Court (RJD) (by ECF)
Mitchell A. Golub, Esq. (by ECF).
John M. Burke, Esq. (by ECF).